UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DOLORES DELEON d/b/a MANILA
INTERNATIONAL, LLC,

     Plaintiff,

v.

CIT SMALL BUSINESS LENDING
CORPORATION,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:11-CV-01028-PMP-NJK

ORDER

Presently before the Court is Plaintiff Dolores DeLeon doing business as Manila International, LLC's Objections to Magistrate's Findings and Recommendations (Doc. #105), filed on September 7, 2012.  Defendant CIT Small Business Lending Corporation filed an Opposition (Doc. #113) on September 24, 2012.

Also before the Court is Defendant's Motion for Summary Judgment (Doc. #131), filed on October 15, 2012.  Plaintiff filed an Affidavit of Plaintiff in Opposition to Defendant's Motion for Summary Judgment (Doc. #148) on November 27, 2012.  Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment (Doc. #153) on November 29, 2012.  Defendant filed a Reply (Doc. #167) on December 17, 2012.

Also before the Court is Defendant's Motion for Sanctions (Doc. #137), filed on November 1, 2012.  Plaintiff filed an Opposition (Doc. #155) on November 29, 2012.  Defendant filed a Reply (Doc. #161) on December 10, 2012.

Also before the Court is Plaintiff's Motion to Deny or Delay Defendant's Motion for Summary Judgment (Doc. #139), filed on November 9, 2012. Defendant filed an Opposition (Doc. #144) on November 26, 2012. Plaintiff filed a Reply (Doc. #160) on December 6, 2012.

Also before the Court is Defendant's Motion to Strike Plaintiff's Affidavit in Opposition to CIT's Motion for Summary Judgment (Doc. #152), filed on November 29, 2012. Plaintiff filed an Opposition (Doc. #158) on December 5, 2012. Defendant filed a Reply (Doc. #163) on December 13, 2012.

Also before the Court is Defendant's Motion to Strike Plaintiff's Opposition to CIT's Motion for Summary Judgment (Doc. #154), filed on November 29, 2012. Plaintiff filed an Opposition (Doc. #159) on December 5, 2012. Defendant filed a Reply (Doc. #163) on December 13, 2012.

Also before the Court is Defendant's Motion to Strike Plaintiff's Opposition to CIT's Motion for Sanctions (Doc. #157), filed on December 3, 2012. Plaintiff filed an Opposition (Doc. #162) on December 12, 2012. Defendant filed a Reply (Doc. #169) on December 19, 2012.

Also before the Court is Plaintiff's Motion for Sanctions (Doc. #165), filed on December 17, 2012.[1] Defendant filed an Opposition (Doc. #173) on January 3, 2013. Plaintiff did not file a reply.

Also before the Court is Plaintiff's Objections to Magistrate's Findings and Recommendations (Doc. #196), filed on March 21, 2013. Defendant filed an Opposition (Doc. #200) on April 8, 2013.

///

---

[1] The Magistrate Judge previously addressed the discovery portion of this Motion. (Order (Doc. #187).) The Court now will address the remainder of Plaintiff's Motion for Sanctions.

Also before the Court is Plaintiff's Objections to Magistrate's Findings and Recommendations (Doc. #199), filed on April 8, 2013.  Defendant filed an Opposition (Doc. #202) on April 25, 2013.

**I. BACKGROUND**

Plaintiff Dolores DeLeon has been involved in the wedding business since the 1980s. (Def.'s Mot. for Sanctions (Doc. #137), Ex. A at 2.)  In 2002, Plaintiff decided to open a wedding chapel in the Hawaiian Market Place on the Las Vegas Strip.  (Id.) Plaintiff signed a lease with the Hawaiian Market Place in 2003 and began to build out the leased premises.  (Aff. of Pl. in Opp'n to Def.'s Mot. Summ. J. (Doc. #148) ["Pl.'s Aff."] at 3.)  To pay for construction of the premises, Plaintiff decided to attempt to obtain a loan guaranteed by the Small Business Administration ("SBA").  (Def.'s Mot. for Sanctions, Ex. A at 3.)

In August 2004, Defendant CIT Small Business Lending Corporation, which is in the business of lending money, sent Plaintiff a letter proposing an SBA-guaranteed loan for Plaintiff's wedding business, Manila International, LLC ("Manila").  (Def.'s Mot. Summ. J. (Doc. #131) ["Def.'s MSJ"], Ex. C at 1, Ex. F.)  The letter stated it was a proposal and did "not constitute an agreement, an offer to enter an agreement, or a commitment to lend." (Def.'s MSJ, Ex. F at 1.)  Defendant proposed Plaintiff pay $1,000 as a "packaging fee" plus a $500 deposit for out-of-pocket expenses.  (Id.)  The letter stated the proposal was "subject to and conditioned on [Defendant's] approval and issuance of a conditional commitment letter that sets forth additional terms and conditions of the proposed loan, [Defendant's] receipt of an SBA Guaranty of at least 75% of the loan, and will be subject to additional terms and conditions contained in the Authorization and Loan Agreement which will be issued in writing if SBA approves a loan request submitted to it."  (Id. at 2.)  The packaging fee and $500 deposit were refundable if Defendant declined the loan, less any out-of-pocket expenses Defendant incurred.  (Id.)  However, if the Defendant conditionally

approved the loan, the packaging fee would be non-refundable at that point.  (Id.)

Defendant sent Plaintiff a similar letter with different proposed terms in October 2004.

(Pl.'s Aff. at 4 & Ex. 2.)  Plaintiff "understood these two letters were proposals for

discussion only and there was no commitment to lend the money."  (Pl.'s Aff. at 4.)

Plaintiff submitted a formal loan application package to Defendant in early

December 2004.  (Id. at 4-5.)  On December 23, 2004, Defendant sent Plaintiff a

Conditional Commitment letter.  (Pl.'s Aff., Ex. 6.)  In the Conditional Commitment,

Defendant "conditionally approved" the loan "subject to authorization by the [SBA], and

subject to all other terms and conditions set forth in this letter and the draft SBA Loan

Authorization attached hereto."  (Id. at 1.)  The Conditional Commitment provided that

Plaintiff must pay a non-refundable $1,000 packaging fee and a $500 costs deposit.  (Id.)

The Conditional Commitment further provided that it was–

> made in reliance on the continuation of the present management,
> ownership and financial condition and status of the Borrower and
> guarantor(s) and other facts and circumstances known by the
> [Defendant] as of the date hereof.  Accordingly, should any actual or
> threatened adverse change, financial or otherwise, affect the Borrower,
> any guarantor, or any collateral pledged as security, [Defendant] shall
> have the right to modify the terms of this Conditional Commitment, or
> withdraw its Conditional Commitment, in which case it shall have no
> further obligation to Borrower to make any loan, or otherwise.  The
> determination of adverse change shall be made in the sole and absolute
> discretion of [Defendant].

(Id. at 2.)  The Conditional Commitment further provided that if the loan did not close "for

any reason" within two months of the date of the Conditional Commitment, the Conditional

Commitment would "terminate and [Defendant] shall have no obligation to fund the Loan."

(Id.)  The Conditional Commitment contained a Colorado choice of law provision.  (Id.

("This Conditional Commitment shall be governed by the internal laws and judicial

decisions of the state of Colorado.").)

Plaintiff signed and returned the Conditional Commitment the next day.  (Id.)

Plaintiff also paid the $1,500 packaging fee and out-of-pocket expenses deposit.  (Pl.'s Aff.

1  at 5.)  On January 3, 2005, Plaintiff filed an Application for Business Loan with the SBA in

2  the amount of $500,000.  (Def.'s MSJ, Ex. D.)  On January 12, 2005, Defendant submitted

3  its application for a guaranty from SBA on the proposed loan.  (Pl.'s Aff., Ex. 8.)

4        On January 24, 2005, Defendant sent Plaintiff a letter enclosing "drafts of loan

5  documents that [Defendant] intends to have executed in conjunction with financing being

6  provided to [Manila]."  (Def.'s MSJ, Ex. G.)  Among the enclosures were drafts of the SBA

7  Authorization, the loan agreement, the deed of trust, and an SBA guaranty.  (Id.)  On March

8  22, 2005, Defendant faxed to Plaintiff contact information for a title company located in

9  Nevada.  (Def.'s MSJ, Ex. J; Pl.'s Aff. Exs. 15, 19.)  That same date, Defendant's

10  employee, Christina Benney ("Benney"), sent Plaintiff an email stating that Defendant "still

11  need[ed]" certain documents, including a release of a lien on collateral property, a list of

12  machinery and equipment with serial numbers and the value of each item, an "Original

13  Landlord Waiver," and business insurance.  (Def.'s MSJ, Ex. K.)  Benney further stated that

14  the escrow company had "availability on Friday- provided that I receive everything, I will

15  be able to close your transaction on Friday.  Please note that until I have the above, and all

16  of the injection below squared away, I cannot close."  (Id.)  Benney also requested a contact

17  at Plaintiff's bank to verify where Plaintiff's deposit money came from.  (Id.)

18        On February 14, 2005, Defendant emailed Plaintiff requesting various

19  documents, including Manila's operating agreement, an assignment of the lease to Manila,

20  an Original Landlord Waiver, a vendor and invoices listing, and a tax return from an

21  investor in Plaintiff's business.  (Pl.'s Aff., Ex. 14.)  Defendant stated in this email that it

22  was "very possible we can get your loan closed and funded next week . . . if you can

23  provide everything to me by this Wednesday at the latest."  (Id.)  Defendant also advised

24  that there "possibly may [be] additional items" Defendant would require.  (Id.)

25        On March 11, 2005, Defendant amended the proposed loan from $500,000 to

26  $300,000.  (Pl.'s Aff., Ex. 13.)  That same date, Defendant sent an email to Plaintiff

advising her of the new loan amount.  (Pl.'s Aff., Ex. 14.)  Defendant further stated it was "very doable to get your loan closed and funded by the end of next week, IF you provide the revised breakdown and copies of the corresponding invoices by Monday."  (Id.)  On March 21, 2005, Defendant sent Plaintiff another email requesting additional information, including bank statements showing Plaintiff withdrew money from her personal accounts to deposit into the business accounts.  (Id.)  Defendant stated its "goal is to have this closed as soon as possible, but [Defendant] cannot close without having [the equity] injection all buttoned up."  (Id.)  That same day, Defendant prepared instructions to escrow.  (Pl.'s Aff., Ex. 19.)  On March 21 and 22, 2005, Defendant completed and signed a compliance review worksheet which certified that Defendant's employees had "reviewed the loan file for the above mentioned loan with regards to SBA Compliance, [Defendant's] legal compliance and [Defendant's] policies.  I have identified all omissions, exceptions and/or errors within the loan file on the Exception Memo and all items were addressed and corrected by the closer."  (Pl.'s Aff., Ex. 21.)

On March 24, 2005, Defendant faxed to Plaintiff a notice of lien by Republic Services of Nevada on collateral Plaintiff was offering in support of the loan.  (Pl.'s Aff., Ex. 10.)  Defendant indicated the lien "must be taken care of."  (Id. (emphasis omitted).)  Plaintiff responded the next day by faxing a receipt from Republic Services of Nevada showing she paid the balance.  (Pl.'s Aff., Ex. 11.)

From March 25 through March 29, 2005, Plaintiff and Defendant exchanged emails in which Defendant requested further information, and Plaintiff responded that she had provided such information already, she would provide such information soon, or she requested clarification.  (Def.'s MSJ, Ex. L.)  On March 29, 2005, Defendant sent Plaintiff another email which listed "outstanding" items, including machinery and equipment invoices, release of liens, business insurance, bank statements, and other documents.  (Id.)  The email stated that "closing your loan by the end of the week is possible, if all of the

documentation is provided by today." (Id.)  Defendant also stated it "really want[ed] to get

your loan closed, but need[ed] all this documentation to do it." (Id.)  That same date,

another employee of Defendant certified on a compliance review worksheet that he or she[2]

"reviewed all appropriate funding documents for the above mentioned loan to ensure

compliance with [Defendant's] policy.  I authorize the funding on 3/31/05 for

$300,000.00." (Pl.'s Aff., Ex. 21.)  An April 1, 2005 Final Customer Statement for Plaintiff

indicates the loan payoff was funded on March 31, 2005.  (Pl.'s Aff., Ex. 20.)

On April 5, 2005, Defendant sent Plaintiff a letter stating that based on "adverse

changes," Defendant was "withdrawing it's [sic] loan approval." (Def.'s Mot. for

Sanctions, Ex. B.)  The identified adverse changes were:

1. Deterioration in collateral value from the original approval.
2. Borrowed equity injection into the project.
3. Slow payment performance with Vendors of Dolly's Inc.

(Id.)  Plaintiff received this letter shortly after it was sent.  (Def.'s Mot. for Sanctions, Ex. C

at 191.)  According to Plaintiff, none of these reasons previously had been discussed with

her as a potential problem that would lead Defendant to withdraw approval of the loan.

(Pl.'s Aff. at 9.)

Following Defendant's denial of the loan, Plaintiff avers she had to cancel

planned advertising promotions and had difficulty paying her creditors.  (Id. at 11.)

Plaintiff states she borrowed money using a rental property as collateral to keep the

business afloat.  (Id.)  Plaintiff later sold that property in January 2006 and obtained a profit

of $130,000.  (Id.)  Plaintiff also avers she pawned "thousands of dollars of jewelry" for

$12,000.  (Id. at 12.)  However, Plaintiff was unable to keep the wedding business viable,

and she was evicted from the Hawaiian Market Place in August 2007.  (Id.)

///

---

[2]  The signature is illegible.

Plaintiff brought suit in Nevada state court on March 21, 2011, asserting claims against Defendant for breach of contract/promissory estoppel, misrepresentation, and damages sustained from Defendant's rescission of the contract.[3]  (Pet. for Removal (Doc.#1), Ex. A.)  Defendant removed the action to this Court on June 22, 2011.  (Pet. for Removal.)  The parties are now before the Court on a variety of motions.

## II.  DISCUSSION

### A.  Objections to Magistrate Judge's Ruling (Doc. #105)

Plaintiff objects to the Magistrate Judge's ruling reflected in the minutes and transcript of an August 22, 2012 hearing which required Plaintiff to produce certain discovery materials and which denied an extension of the deadline to submit an expert witness report.  By the time of the hearing, the remaining issues related to production of documents were (1) producing all documents Plaintiff intends to use at trial, (2) producing Plaintiff's 2004 tax return and any documents being used to prepare Plaintiff's 2005 tax return, (3) documentary proof that Plaintiff invested over $1 million in her business, and (4) evidence of damages, specifically documents relating to a $50,000 attorney's fee bill and $15,000 owed to an individual lender.  (Tr. (Doc. #106).)

The Magistrate Judge's ruling granting Defendant's Motion to Compel was not clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Grimes v. City & Cnty. of S.F., 951 F.2d 236, 240 (9th Cir. 1991).  As for the first category, the Magistrate Judge acknowledged that requesting all documents to be used at trial was premature and denied that request.  As to the second category, despite the fact that Defendant made the discovery request in December 2011, Plaintiff stated at the hearing that she did not request her 2004 tax return from the Internal Revenue Service until June 2012.  (Tr. at 11.)  Plaintiff

---

[3]  Plaintiff does not explain how her claim that she suffered damages from Defendant's unilateral rescission of the contract is different from her breach of contract claim.  Accordingly, the Court will treat this claim as duplicative of her breach of contract claim.

indicated at the hearing her accountant was preparing a 2005 tax return, but Plaintiff either did not produce to Defendant the documentary evidence her accountant was using to construct the tax return and/or did not indicate to Defendant which documents Plaintiff already had turned over were responsive to this discovery request.  (Id. at 16-18.)  Requiring Plaintiff to identify and turn over documents responsive to this discovery request and to clarify whether all responsive documents were produced is not clearly erroneous or contrary to law.

As to the third category, as discussed at the hearing, Plaintiff did not produce documents tracing money from Plaintiff to investment in the business to establish Plaintiff's claim that she invested over $1 million in her business.  (Id. at 18-42.)  Requiring Plaintiff to produce in response to a discovery request documents which trace the movement of funds from her personal account to specific business expenses to establish damages is not clearly erroneous or contrary to law.

As to the fourth category, Plaintiff described the documents at issue which had been produced, but Plaintiff previously had not Bates stamped the documents or identified which documents were responsive to this request.  (Id. at 43-51.)  Requiring Plaintiff to identify the particular documents which are responsive to this request was neither clearly erroneous nor contrary to law.

Finally, Plaintiff's request to extend the discovery deadline to submit an expert report was untimely and Plaintiff failed to identify any good cause or excusable neglect for Plaintiff's failure to timely provide the report or to timely move to extend the deadline.  (Id. at 52.)  Plaintiff did not have the expert report even by the time of the August 22, 2012 hearing.  (Id.)  Consequently, the Magistrate Judge's decision to deny the extension was neither clearly erroneous nor contrary to law.  The Court therefore will overrule Plaintiff's objections to the Magistrate Judge's rulings at the August 22, 2012 hearing.

///

**B.  Defendant's Motion for Summary Judgment (Doc. #131)**

Defendant moves for summary judgment on Plaintiff's breach of contract and misrepresentation claims.  As to Plaintiff's breach of contract claim, Defendant argues that the alleged contract is barred by the statute of frauds, there was no such contract because the parties never formed an enforceable contract, and any breach of contract claim is time-barred.  As to Plaintiff's misrepresentation claim, Defendant argues any such claim is time-barred and Plaintiff has failed to establish justifiable reliance on any alleged misrepresentation.  Finally, Defendant argues Plaintiff cannot establish she suffered damages in relation to either her breach of contract or misrepresentation claims.

Plaintiff responds that the statute of frauds is satisfied because the parties reached a written loan agreement, although the contract was subject to conditions subsequent which made funding of the loan conditional.  Plaintiff contends that nothing in the statute of frauds requires the loan commitment to be unconditional or that it be contained in a single writing.  Plaintiff contends the parties entered into an enforceable contract through multiple documents and by Plaintiff's payment of a loan application fee, at which point Defendant had the obligation to act in good faith and fair dealing in evaluating Plaintiff's loan application.  Plaintiff concedes Defendant had discretion not to fund the loan, but argues that such discretion had to be exercised in good faith and Defendant had to allow Plaintiff the opportunity to cure any identified obstacles to funding the loan.  Plaintiff also contends she may rely on a promissory estoppel theory based on her justifiable reliance on Defendant's assurances to her that the loan would be funded, and that the statute of frauds is not a bar to recovery on a promissory estoppel theory.

As to the statute of limitations, Plaintiff contends that because there was a written contract between the parties, Nevada's six-year limitations period applies to her contract claim.  Plaintiff also asserts that because her misrepresentation claim arises out of the parties' contractual agreement, the six-year limitations period applies to the

misrepresentation claim as well.  Plaintiff argues Defendant breached the contractual covenant of good faith and fair dealing by not funding the loan after Plaintiff had completed all material obligations and after Defendant's employees had advised Plaintiff the loan was going to escrow and should close soon.

Finally, as to damages, Plaintiff argues she relied on the promised loan funds to pay vendors for services and provide funds for future marketing for the wedding business. Plaintiff contends she was forced to obtain other loans to attempt to save the business after Defendant refused to fund the loan.  Plaintiff also argues she may offer her lay opinion on the value of her own business to prove damages.[4]

This Court sitting in diversity applies the "forum state's choice of law rules to determine the controlling substantive law." Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005) (quotation omitted).  Under Nevada choice-of-law rules, the parties to a contract may agree what law governs a contract, so long as the parties "acted in good faith and not to evade the law of the real situs of the contract." Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Investors, 603 P.2d 270, 273 (Nev. 1979).  The contractual choice of law "must have a substantial relation with the transaction," and "the agreement must not be contrary to the public policy of the forum." Id.

In her Opposition, Plaintiff identifies the parties' written contract as the December 2004 Conditional Commitment, pursuant to which Defendant had a duty to

---

[4] Plaintiff separately moves to deny or delay ruling on Defendant's summary judgment motion based on Defendant's refusal to authenticate documents which Defendant produced in discovery.  The Court will deny Plaintiff's Motion because Plaintiff failed to provide the affidavit required by Federal Rule of Civil Procedure 56(d).  Further, as Plaintiff's own Motion states, documents a party produced in discovery are deemed authenticated for summary judgment purposes when offered by the opposing party.  (Pl.'s Mot. to Deny or Delay Def.'s Mot. Summ. J. (Doc. #139) at 8); Orr v. Bank of Am., NT & SA, 285 F.3d 764, 777 n.20 (9th Cir. 2002) (citing Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996)).  Defendant's purported refusal to authenticate therefore operated as no hindrance to Plaintiff timely opposing the summary judgment motion.

consider her loan application in good faith, even if it had no unconditional duty to fund the loan.  (Pl.'s Opp'n to Def.'s Mot. Summ. J. (Doc. #153) at 15, 20.)  The Conditional Commitment contains a Colorado choice of law provision.  There is no evidence the parties acted in anything other than good faith in selecting Colorado as the governing law. Colorado has a substantial relation to the transaction, as Defendant prepared documents related to the loan application and performed an analysis of whether to approve the loan out of Defendant's Colorado office.  (Def.'s MSJ, Exs. D, E, G, M; Pl.'s Aff. at 4-5.)  Plaintiff has not identified anything about the parties' agreement that Colorado law govern the contract which would be contrary to Nevada public policy.  Consequently, Colorado law applies to Plaintiff's breach of contract claim to the extent it is based on a written contract. Under Colorado law, Plaintiff had three years in which to bring her breach of contract claim to the extent it is based on a written contract.  Colo. Rev. Stat § 13-80-101(1)(a).

Defendant breached the contract, if at all, in early April 2005, when it withdrew its conditional approval of the loan and informed Plaintiff of that fact.  Plaintiff therefore had until April 2008 to bring her breach of contract claim, but Plaintiff did not bring this action until March 2011.  Plaintiff's breach of contract claim based on a written contract therefore is time-barred.

To the extent Plaintiff's breach of contract claim is based on an oral agreement, it also is time-barred regardless of which state law applies.  Under Colorado law, all contract actions are subject to the three-year limitations period.  Id.  Under Nevada law, contract claims which are not based on a written contract are subject to a four-year limitations period.  Nev. Rev. Stat. § 11.190(2)(c).  Because Plaintiff brought her claim nearly six years after the alleged breach, her contract claim is untimely.

///

///

///

Plaintiff's reliance on Nevada Revised Statutes § 11.020 does not change this result.  Under § 11.020,

> When a cause of action has arisen in another state, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against the person in this State, except in favor of a citizen thereof who has held the cause of action from the time it accrued.

Although § 11.020 might apply in a case in which the contract did not contain a choice of law provision, here the parties contractually agreed that Colorado law would apply. Extending the limitations period under § 11.020 would nullify the parties' valid and enforceable contractual choice of Colorado law.

Finally, Plaintiff's misrepresentation claim also is untimely regardless of which law applies.  Under Nevada law, misrepresentation claims must be brought within three years for intentional misrepresentations and four years for negligent misrepresentations. Nev. Rev. Stat. §§ 11.190(3)(d), 11.220.  Under Colorado law, misrepresentation claims, whether intentional or negligent, must be brought within three years.  Colo. Rev. Stat. § 13-80-101(1)(c).  Plaintiff did not bring her misrepresentation claim until nearly six years after she learned Defendant would not fund the loan.  Further, even if Plaintiff's misrepresentation claim could be considered to be founded upon the parties' written agreement, as Plaintiff argues in an attempt to apply Nevada's six-year limitations period for contract actions,[5] the Conditional Commitment contains a Colorado choice of law provision which still would subject Plaintiff's misrepresentation claim to a three-year limitations period.  Accordingly, Plaintiff's misrepresentation claim is time-barred.

No genuine issue of material fact remains that Plaintiff's breach of contract and misrepresentation claims are time-barred.  The Court therefore will grant Defendant's

---

[5]  Nev. Rev. Stat. § 11.190(1)(b).

Motion for Summary Judgment.[6]

### C.  Defendant's Motion for Sanctions (Doc. #137)

Defendant moves for sanctions against Plaintiff's counsel, Robert Lueck ("Lueck"), under Federal Rule of Civil Procedure 11 based on Lueck's refusal to withdraw Plaintiff's misrepresentation claim.  Defendant contends the claim was frivolous because it was time barred, and Lueck previously admitted it was time-barred, yet he refused to withdraw the claim even in the face of Defendant's unfiled Rule 11 Motion.  Defendant also argues Lueck has pursued frivolous damages claims.

Lueck responds that the misrepresentation claim originally was filed in state court by prior counsel, and thus he should not be sanctioned for its inclusion in the Complaint. Lueck further argues the Court previously denied a motion to dismiss based on the statute of limitations, and thus he should not be sanctioned for continuing to pursue the claim in the face of Defendant's limitations argument.  Lueck also contends he tried to amend the Complaint to drop the misrepresentation claim, but this Court denied the motion to amend. Lueck asserts that upon further research, grounds exist for arguing the limitations period has not expired for the misrepresentation claim, and therefore sanctions are inappropriate.

Pursuant to Federal Rule of Civil Procedure 11, a person who signs a pleading or paper in an action before this Court thereby "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(a), (b)(2).  The person also certifies

---

[6] The Court will deny as moot Defendant's Motion to Strike Plaintiff's Affidavit in Opposition to CIT's Motion for Summary Judgment (Doc. #152) and Defendant's Motion to Strike Plaintiff's Opposition to CIT's Motion for Summary Judgment (Doc. #154) because the Court will grant Defendant's Motion for Summary Judgment even considering the documents Defendant seeks to strike.

that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3).  A party may move for Rule 11 sanctions after giving the opposing party a 21-day safe harbor in which to correct a pleading or paper challenged as not compliant with Rule 11.  Fed. R. Civ. P. 11(c)(2).  The Court may award sanctions in the form of requiring the opposing party to pay the moving party's reasonable expenses in bringing the motion, including attorney's fees.  Id.  The Court may impose additional sanctions, both monetary and nonmonetary, but such sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).  Whether to award Rule 11 sanctions lies within the Court's discretion.  Sneller v. City of Bainbridge Island, 606 F.3d 636, 638 (9th Cir. 2010).

The Court, in its discretion, will decline to award Rule 11 sanctions.  This Court previously denied Defendant's motion to dismiss the misrepresentation claim based on statute of limitations grounds.  (Order (Doc. #38).)  Further, although a close call, Lueck's arguments regarding why the misrepresentation claim was timely and the basis for Plaintiff's damages are not so wholly frivolous that Rule 11 sanctions are needed to deter Lueck or others similarly situated.  The Court therefore will deny Defendant's Motion for Sanctions.  The Court also will deny Defendant's Motion to Strike Plaintiff's Opposition to CIT's Motion for Sanctions (Doc. #157).

Because it is a close call, Defendant's Rule 11 Motion was not filed recklessly or in bad faith, and the Court therefore will deny Plaintiff's Motion for Sanctions (Doc. #165) to the extent it is based on Defendant's Rule 11 Motion.  28 U.S.C. § 1927; T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 638 (9th Cir. 1987).  The Court also will deny Plaintiff's Motion for Sanctions to the extent it is based on Defendant's various Motions to Strike.  Plaintiff failed to timely file the documents Defendant seeks to strike and Plaintiff did not obtain an extension for any of the late-filed documents.  The Motions to Strike therefore were not filed recklessly or in bad faith.

**D.  Objections to Magistrate's Findings and Recommendations (Doc. #196)**

Plaintiff objects to the Magistrate Judge's Order (Doc. #189) denying Plaintiff's Motion to Compel, Order (Doc. #190) denying Plaintiff's Motion for Sanctions, and Order (Doc. #191) denying Plaintiff's Motion to Extend Discovery Deadlines.  Plaintiff contends the Magistrate Judge erred by refusing to consider the motions on the merits after the Magistrate Judge concluded Plaintiff failed to satisfy the "meet and confer" requirement.

Defendant responds that Plaintiff failed to meaningfully meet and confer, as reflected in Defendant's Opposition to Plaintiff's Motion to Compel.  Defendant contends Plaintiff never disputed Defendant's recitation of the relevant facts regarding what the parties discussed during a September 20, 2011 telephone call, which Plaintiff now relies upon to satisfy the meet and confer requirement.  Defendant also argues that even if the Magistrate Judge's ruling regarding the meet and confer was erroneous, Plaintiff's Motion to Compel was deficient on numerous other grounds.  Finally, Defendant contends that although Plaintiff mentions the Magistrate Judge's ruling denying Plaintiff's Motion to Extend Discovery Deadlines, Plaintiff offers no substantive argument on why that ruling was clearly erroneous or contrary to law.

The Magistrate Judge denied Plaintiff's Motion to Compel based on Plaintiff's failure to satisfy the meet and confer requirement.  (Order (Doc. #189).)  The Magistrate Judge then denied Plaintiff's related Motion for Sanctions as moot.  (Order (Doc. #190).)  Finally, the Magistrate Judge denied Plaintiff's Motion to Extend Discovery Deadlines because Plaintiff's Motion did not satisfy Local Rules 26-4 and 6-1.  (Order (Doc. #191).)

The Magistrate Judge's rulings are not clearly erroneous or contrary to law.  Pursuant to Federal Rule of Civil Procedure 37(a)(1), a motion to compel discovery must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Local Rule 26-7(b) provides that the Court will not consider

discovery motions "unless a statement of the movant is attached thereto certifying that, after personal consultation and sincere effort to do so, the parties have been unable to resolve the matter without Court action."  The Magistrate Judge may look beyond the certification to determine if in fact the parties conferred and attempted to resolve in good faith all disputed issues before resorting to court intervention.  Childress v. Darby Lumber, Inc., 357 F.3d 1000, 1010 (9th Cir. 2004).

Plaintiff's Motion to Compel contained a certification of counsel referencing two letters between counsel and a telephone conference on September 20, 2013, during which the parties discussed Defendant's refusal to appear at a custodian of records deposition and Defendant's responses to Plaintiff's requests for admissions.  (Pl.'s Mot. to Compel (Doc. #109) at 14-15.)  According to Plaintiff, Defendant refused to alter its discovery responses and Plaintiff therefore filed the Motion to Compel.  (Id. at 15-16.)

However, Defendant presented competing evidence that Defendant and Plaintiff were in communication regarding deficiencies associated with the deposition notice and Certificate of Business Records which Plaintiff wanted Defendant to sign to certify the authenticity of certain documents.  Defendant also expressed its assumption that the deposition was canceled, and Plaintiff did not respond to advise the deposition was going forward until the day before the scheduled deposition.  Defendant also indicated a willingness to continue to work at resolving the parties' differences over Defendant's certification of the authenticity of documents, rescheduling a custodian of records deposition, and responses to requests for admissions, but Plaintiff did not respond or make further effort to resolve the parties' differences.  (Def.'s Consol. Opp'n to Pl.'s Mots. to (1) Compel Discovery, (2) for Sanctions and (3) to Extend Discovery Deadlines (Doc. #125), Exs. A-K, N-U.)  The Magistrate Judge's conclusion that Plaintiff failed to meaningfully satisfy the meet and confer requirement therefore was neither clearly erroneous nor contrary to law.  Further, Plaintiff offers no argument regarding why the Magistrate Judge's denial

of Plaintiff's request to extend the discovery deadline was clearly erroneous or contrary to law.  The Court therefore will overrule Plaintiff's objections.

### E.  Objections to Magistrate's Findings and Recommendations (Doc. #199)

Plaintiff objects to the Magistrate Judge's Order (Doc. #198), in which the Magistrate Judge ruled that Plaintiff and her attorney, Lueck, jointly and severally are liable for $6,300 in attorney's fees the Magistrate Judge awarded in relation to a March 11, 2013 Order (Doc. #188) granting Defendant's Counter-Motion to Compel.  Plaintiff argues the Magistrate Judge erred by requiring Plaintiff to produce documents she does not have.  Plaintiff also argues the Magistrate Judge erred by failing to hold a hearing, thereby denying Plaintiff and Lueck due process.  Defendant responds that Plaintiff did not object to the underlying Order granting the Counter-Motion, but objected only to the Order awarding the amount of attorney's fees, and thus Plaintiff cannot reargue the Motion to Compel. Defendant also argues the objection is untimely to the extent it seeks to object to the March 11 Order.  Defendant further contends Plaintiff had notice and an opportunity to be heard, and Plaintiff failed to request a hearing.

The Magistrate Judge entered an Order on March 11, 2013, granting in part Defendant's Counter-Motion to Compel and ordering "Plaintiff" to pay Defendant's attorney's fees and costs incurred in making the Motion.  (Order (Doc. #188) at 4.)  The Magistrate Judge granted Defendant until March 18, 2013 to submit a declaration outlining the fees and costs, and gave Plaintiff until March 25, 2013 to object to the declaration.  (Id.) On March 13, 2011, Defendant filed a declaration requesting $6,300 in costs and attorney's fees.  (Aff. of Rachel E. Donn, Esq. in Supp. of Def. CIT's Mot. for Att'y's Fees/Sanctions (Doc. #192).)  The next day, Plaintiff filed an Objection (Doc. #193) to the declaration and a supporting Affidavit (Doc. #194) in which she argued, among other things, that she is indigent and unable to pay the fees.

///

On March 26, 2013, the Magistrate Judge entered an Order awarding Defendant $6,300 in attorney's fees against Plaintiff and Lueck.  (Order (Doc. #198).)   The Magistrate Judge concluded that Plaintiff did not dispute the hourly rates were reasonable, and the Magistrate Judge found the stated number of hours were reasonably expended.  (Id. at 1-2.) The Magistrate Judge noted Plaintiff's claim she cannot afford to pay the sanctions, but held that the Court has authority to award fees under Rule 37 against Plaintiff and her counsel, and doing so was "appropriate where (as here) it is unclear based on the record which is less blameworthy than the other."  (Id. at 2.)

To the extent Plaintiff is objecting to the Magistrate Judge's decision granting Defendant's Motion to Compel, that objection is overruled.  Plaintiff did not object to the Magistrate Judge's March 11, 2013 Order within fourteen days.  See LR IB 3-1(a). Morever, for the reasons outlined above with respect to Plaintiff's objections to the Magistrate Judge's ruling as reflected in the August 22, 2012 hearing, the Magistrate Judge's conclusion that Plaintiff had to respond to the requested discovery by producing the requested documents, identifying those documents already produced which are responsive to the particular requests, and/or indicating that no further responsive documents exist is neither clearly erroneous nor contrary to law.

With respect to Plaintiff's objection to the award of $6,300 in fees, before imposing sanctions, a court must provide the party or attorney facing potential sanctions notice and an opportunity to be heard.  Lasar v. Ford Motor Co., 399 F.3d 1101, 1109-10 (9th Cir. 2005); see also Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767 (1980).  The Court must give notice as to the potential sanctions, the particular alleged misconduct, and "the particular disciplinary authority under which the court is planning to proceed."  In re DeVille, 361 F.3d 539, 548 (9th Cir. 2004); Cole v. U.S. Dist. Ct. For Dist. of Idaho, 366 F.3d 813, 822 (9th Cir. 2004); see also Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1132 (9th Cir. 2008) ("To the extent the district court was focused on punishing [counsel]

for his trial misbehavior, it was incumbent on the court to give him fair notice of that personal exposure and obligation to appear in person.").

"These minimal procedural requirements give an attorney an opportunity to argue that his actions were an acceptable means of representing his client, to present mitigating circumstances, or to apologize to the court for his conduct." Lasar, 399 F.3d at 1110. Further, the procedural requirements ensure that the attorney or party has an opportunity to prepare a defense and explain his or her questionable conduct, that the judge will consider the propriety and severity of the sanction in light of the person's explanation of his or her conduct, and that "the facts supporting the sanction will appear in the record, facilitating appellate review." Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc., 834 F.2d 833, 836 (9th Cir. 1987) (quotation omitted).  The Court need not hold an evidentiary hearing, however, as the opportunity to brief the issue will suffice to comply with due process. Lasar, 399 F.3d at 1112; Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000).

Here, the Magistrate Judge's sanctions Order (Doc. #198) awarding $6,300 in attorney's fees and costs is contrary to law because the Magistrate Judge did not provide adequate notice to Lueck that he personally may be subject to sanctions prior to imposing the sanctions in this matter.  Defendant's Counter-Motion did not explicitly seek sanctions against Lueck.  Rather, the Counter-Motion requested "that Plaintiff be required to pay for CIT's attorney's fees and costs."  (Def.'s CounterMot. to Compel Disc. & for Sanctions (Doc. #128) at 38.)  Only in its Reply (Doc. #141 at 6) did Defendant request the Court to "sanction Plaintiff and or Plaintiff's Counsel."

Importantly, the Magistrate Judge's Order (Doc. #188) granting in part Defendant's Counter-Motion to Compel did not advise Lueck he may be subject to sanctions personally.  In the March 11 Order, the Magistrate Judge ordered "Plaintiff to pay attorney's fees and costs to be determined by the Court at a later date."  (Order (Doc. #188)

at 4.)  Lueck therefore had no reason to object to the March 11 Order as it related to awarding fees against him personally.  The Magistrate Judge's later Order (Doc. #198) imposing $6,300 in sanctions against Lueck jointly and severally with Plaintiff therefore cannot stand as to Lueck because he was not given adequate notice and an opportunity to be heard before sanctions were imposed on him personally.

In light of the fact that the sanctions award against Lueck cannot stand, it is unclear whether the Magistrate Judge would have reached the same determination regarding the amount of sanctions awarded against Plaintiff.  The Magistrate Judge rejected Plaintiff's argument regarding her inability to pay at least in part because the award was joint and several with Plaintiff's attorney.  (Order (Doc. #198) at 2.)  The Court therefore will vacate the Magistrate Judge's March 26, 2013 Order (Doc. #198) without prejudice to any further proceedings consistent with this Order with respect to Defendant's Counter-Motion to Compel.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff Dolores DeLeon doing business as Manila International, LLC's Objections to Magistrate's Findings and Recommendations (Doc. #105) are hereby OVERRULED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. #131) is hereby GRANTED.  Judgment is hereby entered in favor of Defendant CIT Small Business Lending Corporation and against Plaintiff Dolores DeLeon doing business as Manila International, LLC.

IT IS FURTHER ORDERED that Defendant's Motion for Sanctions (Doc. #137) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Deny or Delay Defendant's Motion for Summary Judgment (Doc. #139) is hereby DENIED.

///

1   IT IS FURTHER ORDERED that Defendant's Motion to Strike Plaintiff's

2   Affidavit in Opposition to CIT's Motion for Summary Judgment (Doc. #152) is hereby

3   DENIED.

4   IT IS FURTHER ORDERED that Defendant's Motion to Strike Plaintiff's

5   Opposition to CIT's Motion for Summary Judgment (Doc. #154) is hereby DENIED.

6   IT IS FURTHER ORDERED that Defendant's Motion to Strike Plaintiff's

7   Opposition to CIT's Motion for Sanctions (Doc. #157) is hereby DENIED.

8   IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions (Doc. #165) is

9   hereby DENIED.

10   IT IS FURTHER ORDERED that Plaintiff's Objections to Magistrate's Findings

11   and Recommendations (Doc. #196) are hereby OVERRULED.

12   IT IS FURTHER ORDERED that Plaintiff's Objections to Magistrate's Findings

13   and Recommendations (Doc. #199) are hereby SUSTAINED.  The Magistrate Judge's

14   March 26, 2013 Order (Doc. #198) is hereby VACATED without prejudice to any further

15   proceedings consistent with this Order with respect to Defendant's Counter-Motion to

16   Compel (Doc. #128).

17

18   DATED:  May 3, 2013

19   _____

20   PHILIP M. PRO
     United States District Judge

21

22

23

24

25

26